Robert HOBBS, Appellee,

v.

Kevin Wayne RYCE, Appellant.

Robert Hobbs, Appellant,

v.

Kevin Wayne Ryce and James R. Neeb, Jr., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 31, 2000.
Filed Feb. 15, 2001.

Benjamin A. Nicolosi, Scranton, for Ryce and Neeb.

Robert J. Murphy, Scranton, for Hobbs.

Before POPOVICH, EAKIN and BECK, JJ.

BECK, J.:

¶ 1 We decide, *inter alia*, whether a parent's limited tort election applies to a minor residing with his parents, and whether the trial court properly applied sections 1711(a) and 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) to reduce a verdict for medical expenses to zero.

¶ 2 This action involved a motor vehicle accident. Plaintiff Robert Hobbs, who at the time of the accident was sixteen years old and living with his parents, sued for personal injuries. Hobbs was a passenger sitting in the rear of a vehicle driven by defendant Kevin Ryce. Ryce conceded liability, and the matter went to trial on causation and damages only. The jury determined that Ryce was causally negligent, and awarded Hobbs $3,000 in medical expenses. The jury did not award Hobbs any amount for pain and suffering or wage loss, although evidence was presented on these claims.

¶ 3 Post trial motions were filed by both parties. Ryce sought to reduce the verdict to zero, arguing that the MVFRL, 75 Pa. C.S. §§ 1711(a) and 1722, require that an injured insured recover the first $5,000 in medical expenses from his own insurer. The trial court granted this motion. The trial court also considered Hobbs's post trial motion requesting a new trial on damages because the jury's verdict on pain and suffering and wage loss was against the weight of the evidence. The trial court agreed, and granted a new trial limited to a determination of damages. Finally, the trial court denied Ryce's motion that in a new trial Hobbs should be bound by the limited tort selection made by his father on his insurance policy. We have before us the parties' cross-appeals from the trial court's disposition of the parties' post trial motions. We affirm in part and reverse and remand in part.

## APPLICABILITY OF LIMITED TORT

■ ¶ 4 Before we reach the issue of whether the trial judge properly granted a new trial as to damages we must decide whether Hobbs is bound by his father's limited tort selection and thus precluded from recovering non-economic damages in the absence of a serious injury.[1] By defi-

---

1. 75 Pa.C.S. § 1705. The MVFRL defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigure-ment." 75 Pa.C.S. § 1702. Where reasonable minds could differ as to the severity of the plaintiff's injury in a limited tort case, the issue should be submitted to the jury. *Wash-*

nition of the MVFRL, Hobbs-as a minor residing in his father's home at the time of the accident-is an "insured" under his father's policy. 75 Pa.C.S. § 1705(f)(2) (an "insured" is any individual residing in the household of the named insured who is a minor in the custody of either the named insured or relative of the named insured).

¶ 5 The relevant statute further provides:

**(b) Application of tort options.—**

(2) The tort option elected by a named insured *shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy.* In the case where more than one private passenger vehicle policy is applicable to an insured and the policies have conflicting tort options, the insured is bound by the tort option of the policy associated with the private passenger motor vehicle in which the insured is an occupant at the time of the accident if he is an insured on that policy and bound by the full tort option otherwise.

75 Pa.C.S. § 1705(b)(2) (emphasis added). There is nothing in the record to indicate that "more than one private passenger vehicle policy" with "conflicting tort options" was applicable to Hobbs in this case, and therefore, as an insured on his father's policy, he is bound by the limited tort election.[2] *See Berger v. Rinaldi,* 438 Pa.Super. 78, 651 A.2d 553, 557 (1994) (mother's full tort election applied to "insured" son residing in same household). *See also Hames v. Philadelphia Housing Auth.,* 696 A.2d 880, 883 (Pa.Commw.1997) (section 1705(b)(2) indicates the legislature intended that minor children residing in their parents' household be subject to the same tort option as their parents).

¶ 6 As a result, on re-trial, Hobbs may recover damages for pain and suffering only if it is determined that he suffered a serious injury. 75 Pa.C.S. § 1705; *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998).

### WEIGHT OF THE EVIDENCE

■ ¶ 7 We now address the trial court's grant of a new trial on damages for pain and suffering and wage loss.[3] The

*ington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998). In this case, the trial judge decided, in response to pre-trial motions in limine, that the limited tort option did not apply to Hobbs, and that the threshold question of whether he had suffered "serious bodily injury" under the limited tort option would not be presented to the jury. Order of Court dated August 27, 1999. In its opinion, the trial court held that even if the limited tort option did apply, Hobbs's injuries· were serious enough to breach the limited tort threshold. Trial Court Opinion dated April 20, 2000, at 1, 3.

**2.** Hobbs's reliance on *Ickes v. Burkes,* 713 A.2d 653 (Pa.Super.1998), for the proposition that he is not bound by his father's limited tort selection is misplaced. In *Ickes,* we held the plaintiff wife was not bound by her husband's *imputed* limited tort status, based on the fact that he owned a registered, uninsured vehicle. She was not the owner of a regis-

tered vehicle, and was not a "named insured" or "insured" under any policy, and therefore was entitled to full tort rights under 75 Pa. C.S. § 1705(b)(3). *Ickes* is easily distinguishable from this case.

**3.** Ryce claims this issue was waived when Hobbs failed to object immediately after the verdict was announced by the jury. Ryce argues that this situation is analogous to that in *Picca v. Kriner,* 435 Pa.Super. 297, 645 A.2d 868 (1994), where we held a plaintiff who failed to object to the jury's verdict prior to the jury's dismissal was barred from requesting a new trial. However, in *Picca,* there was an inconsistent jury finding that might have been corrected had the jury been instructed and sent back to continue deliberating. *Id.* at 871. Without such opportunity, the appellate court was left with an ambiguous record. *Id.* Failure to object, and thus allow the trial court an opportunity to correct

trial judge based his award of a new trial on his opinion that "the evidence was uncontradicted that the plaintiff had suffered serious and disabling injuries as a direct result of the accident; that he had substantial wage loss; that he required surgery to attempt to correct the substantial loss of use of his limb." The trial judge concluded that the jury's verdict shocked the conscience of the court.[4] Trial Court Opinion at 3.

¶ 8 Under these circumstances, where the trial court has specifically enumerated the reasons on which it based its grant of a new trial, we may examine only those stated reasons to determine whether they may be supported by the record. *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181, 1187 (1993). Where the record adequately supports the trial court's reasons and factual basis, there is no abuse of discretion; however, if the record discloses that evidence was merely conflicting, the new trial order must be reversed. *Id.*

¶ 9 The trial court determined that the jury's damage award, which failed to include an award for pain and suffering and lost wages, "shocked the conscience" of the court. A jury verdict may be set aside as inadequate where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relationship to the loss suffered by the plaintiff. *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1, 4 (1994). Jury verdicts awarding zero damages are against the weight of the evidence where undisputed medical evidence reveals that the plaintiff has suffered injuries in the accident that were of a type normally associated with pain and suffering. *Neison v. Hines*, 539 Pa. 516, 527, 653 A.2d 634, 640 (1995) (defendant's expert conceded plaintiff had suffered neck sprain and a shoulder blade injury); *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514, 519 (1995) (where uncontradicted medical evidence shows compensable injury, jury award of zero warranted new trial).

¶ 10 In this case, the following evidence was uncontradicted at trial. Hobbs was a rear seat passenger in Ryce's car at the time of the accident, which caused extensive damage to the vehicle. Hobbs struck his head and shoulder. Hobbs himself was not certain if he lost consciousness, but Ryce testified that he did. Hobbs was treated in the emergency room for abrasions on his face and arms, but he denied pain and was not admitted to the hospital. Over the following weeks Hobbs suffered from headaches, nausea, and blackouts. His shoulder was sore and his range of motion limited, and the joint would "pop" in and out of place. He re-

---

the situation, constituted waiver under such circumstances. *Id.*

In this case, the jury awarded medical expenses and rejected Hobbs's claims of pain and suffering and lost wages. Objecting to this verdict "would not have eliminated the possibility of a new trial. A trial judge is not at liberty to suggest to the jury that the weight of the evidence did not support its damage award." *Burnhauser v. Bumberger*, 745 A.2d 1256, 1260 (Pa.Super.2000) (citing *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514, 519 (1995)). Instead, any alleged error on this verdict was properly preserved through post trial motions. *Id.See also King v. Pulaski*, 710

A.2d 1200, 1204 (Pa.Super.1998) (although verdict was arguably inadequate, there was no flaw in the sense that the jury misunderstood the law, received ambiguous charge or answered poorly worded interrogatories; post trial motion was sufficient to preserve alleged error).

4. The trial judge evidently believed the jury found against plaintiff because a "slouching, mumbling, disheveled, and disinterested nineteen-year-old male does not endear himself to the tender mercies of otherwise rational adults." Trial Court Opinion at 3 n. 1.

ceived physical therapy for several months.

¶ 11 One of Hobbs's treating physicians, Dr. Hubbard,[5] testified he observed a separation of the acromioclavicular joint and that soft tissue abnormality was shown in an MRI, although x-rays did not show any abnormality. Hubbard also stated that Hobbs might have a shoulder subluxation (where the shoulder joint chronically "pops" in and out) but that surgery would be necessary to confirm that diagnosis. A shoulder subluxation can be caused by non-traumatic impact, such as playing sports,[6] but Hubbard believed Hobbs's injury was directly related to the accident in this case. The medical records indicated that Hobbs's condition improved over the months he received physical therapy, and that he was a "no-show" for some appointments.

¶ 12 Hubbard opined that Hobbs could no longer do construction work, which he had done prior to the accident in his father's company. Evidence indicated that Hobbs's medical expenses up to the time of trial were $3,000, but that if the recommended surgery were performed, his costs would rise to $10,500. Ryce presented no medical testimony at trial. The trial judge concluded that, based on this record, the jury's verdict of medical expenses only, and zero damages for pain and suffering and wage loss, was against the weight of the evidence.

¶ 13 Of course, jurors are free to award medical expenses only, in cases where they do not believe that pain and suffering, or missed work, resulted from an injury. *Catalano v. Bujak*, 537 Pa. 155,

642 A.2d 448, 451 (1994). *See also Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885 (1984) (jury was not required to award plaintiff any amount if it believed the injury suffered in accident was insignificant). Such a determination will not be disturbed unless there is evidence of unfairness, mistake, partiality, prejudice, corruption, exorbitance, excessiveness, or a result that is offensive to the conscience and judgment of the court. *Catalano, supra*, at 451.

> A verdict based on substantial, albeit conflicting evidence, is conclusive on appeal. It is not our role, as an appellate court, to pass on the credibility of the witnesses or to act as the trier of fact; we will not substitute our judgment for that of the fact-finding jury.

*Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, 344 Pa.Super. 367, 496 A.2d 840, 845 (1985). "Jurors are not compelled to find pain where there was no objective injury ... it is not a fact of human experience that *every* tort produces *compensable* pain." *Boggavarapu v. Ponist*, 518 Pa. 162, 542 A.2d 516, 519 (1988).

¶ 14 However, "where the injustice of the verdict stands forth like a beacon, a court should not hesitate to find it inadequate and order a new trial." *Kiser v. Schulte, supra* at 226, 648 A.2d 1, 4. In such cases, "we must defer to the trial court who observed all the witnesses and had a perception of the entire trial that we cannot obtain from a review of the cold record." *King v. Pulaski, supra* at 1205. "The synthesis of these conflicting rules is that a jury is entitled to reject any and all

---

5. Dr. Hubbard did not see Hobbs until after he had reached "full mobility" and had been discharged from physical therapy. Hubbard's testimony was supported by the records compiled by Hobbs's other treating physicians, Dr. Mast and Dr. Rhodes.

6. Hobbs played sports regularly prior to the accident, and testified that he had played some basketball since the accident, but that he could only "coach the little kids" and can no longer play competitively.

evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison, supra* at 521, 653 A.2d at 637. *See Charlton v. Toyota Ind. Equip.*, 714 A.2d 1043 (Pa.Super.1998) (where jury's damages award barely covered medical bills and bore no reasonable relation to undisputed evidence of wage loss and pain and suffering, award of new trial was proper); *Hawley v. Donahoo*, 416 Pa.Super. 469, 611 A.2d 311, 314 (1992) (where evidence presented obvious injury and compensable pain the jury ignored, new trial was necessary).

¶ 15 This case is controlled by our decision in *Burnhauser v. Bumberger*, 745 A.2d 1256 (Pa.Super.2000). There, despite the fact that the parties' experts agreed the plaintiff had suffered soft tissue injuries that would take six months to resolve, the jury awarded damages for medical expenses only, and no damages for pain and suffering. We held "these injuries are of the types that normally involve pain and suffering. The jury's award neglected pain and suffering." *Id.* at 1261. Because the jury's award bore "no reasonable relation to the injuries suffered," there was no abuse of discretion or error of law in the trial court's grant of a new trial. *Id. See also Mano v. Madden*, 738 A.2d 493, 497 (Pa.Super.1999) (where both medical experts believed plaintiff suffered some injury in accident, but jury found that defendant's negligence was not a substantial factor in causing harm, a new trial was necessary); *Lewis v. Evans*, 456 Pa.Super. 285, 690 A.2d 291 (1997) (where medical experts agreed that some injury was caused by accident, and jury awarded zero damages, new trial was necessary).

¶ 16 Here, although the jury certainly could have believed that Hobbs's injuries had resolved by the time of trial and that no further treatment would be necessary, it was uncontested that he suffered some compensable injury in the accident·even if the severity of his injury is in dispute. Under the circumstances, we find no error in the trial court's grant of Hobbs's post trial motion for a new trial on damages for pain and suffering and wage loss.[7]

## MEDICAL EXPENSES

¶ 17 We now determine whether the issue of medical expenses must also be retried. The jury found in favor of Hobbs for $3,000. The trial court then molded the verdict to zero, based on 75 Pa.C.S. § 1722:

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, *a person who is eligible to receive benefits under the coverages set forth in this subchapter...shall be precluded from recovering the amount of benefits paid or payable under this subchapter...*

75 Pa.C.S. § 1722 (emphasis added). The court precluded the issue of medical expenses from being raised in the re-trial. In his cross-appeal, Hobbs asks whether the trial court erred in "excluding medical expenses and future medical expenses from consideration on retrial where the total amount of the combined current and future medical expenses exceeds first-party benefits."

¶ 18 According to 75 Pa.C.S. § 1711, the minimum required medical benefit to be

---

7. The trial court's determination that a grant of a new trial on damages for non economic loss and work loss is supported by the record. However, our conclusion has no bearing on the question of whether Hobbs suffered "serious injury" for purposes of the limited tort option. *See footnote 1, supra.*

provided by all insurers in the Commonwealth is $5,000. This means that, at the very least, the applicable policy in this case, *i.e.,* Hobbs's father's policy, must provide $5,000 in benefits for "reasonable and necessary medical treatment and rehabilitative services." 75 Pa.C.S. § 1712(1). In this case, the jury returned a verdict of $3,000, the cost of treatment up to the time of trial; this award did not include the alleged costs of any future treatment or surgery. This award was supported by the evidence of record, as the jury might have believed that Hobbs's injuries had resolved by the time of trial and that he was not entitled to recover for future medical expenses. Moreover, $3,000 is within the minimum amount that is recoverable only through the applicable motor vehicle insurance policy, in accordance with section 1711, and the trial court properly molded the award to zero.

¶ 19 However, as Hobbs's medical treatment and expenses will necessarily be at issue in the determination of the severity of Hobbs's injuries, and any pain and suffering, we must vacate the molded verdict for medical expenses and remand for new trial on this claim as well.

¶ 20 Order granting new trial limited to damages affirmed in part and reversed in part; new trial shall be as to damages for economic and non-economic damages, if the limited tort threshold is breached. Order molding medical expense verdict to zero vacated. Matter remanded for new trial in accordance with this opinion. Jurisdiction relinquished.